<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>DAVID YOW SHANG CHIUEH and UPRIGHT FINANCIAL CORP.,<br><br>    Defendants. | Case No. 2:25-cv-1920 (BRM) (CF)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Upright Financial Corp. ("Upright") and David Yow Shang Chiueh's ("Chiueh") Partial Motion to Dismiss the U.S. Securities and Exchange Commission's (the "Commission") Amended Complaint (ECF No. 9) pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 41). The Commission filed an Opposition (ECF No. 43), and Defendants filed a Reply (ECF No. 47).[1] This Court has jurisdiction pursuant to 42 U.S.C. § 1331 and 15 U.S.C. §§ 77v(a), 78aa, 80a-41(d), -43, 80b-14. Having reviewed and considered the parties' submissions filed in connection with the motion and having declined to hold oral argument in accordance with Rule 78(b), for the reasons set forth below and for good cause shown, Defendants' Partial Motion to Dismiss is **DENIED**.

---

[1] On October 2, 2025, Defendants requested permission to file a reply in excess of the fifteen-page limit permitted under Local Civil Rule 7.2(b) (ECF No. 44), which the Court granted on October 3, 2025 (ECF No. 45).

## I.    BACKGROUND

For the purpose of this motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the Commission. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### A.    Factual Background

In 1990, Chiueh founded Upright Financial Corp. ("Upright")—an investment adviser organized under the laws of New Jersey. (*See* ECF No. 9 ¶¶ 2, 17–18.) In 1998, Chiueh founded non-party Upright Investments Trust ("UIT")—a registered investment company organized under the laws of Delaware, which is governed by a board of directors (the "Board"). (*See id.* ¶¶ 2, 6, 22–23, 33.) At all times relevant to this matter, Chiueh acted as the owner and president of Upright and the chief executive office ("CEO"), board chairman, and portfolio manager of UIT. (*Id.* ¶¶ 2, 18–19, 22–23.) He also acted as UIT's chief compliance operative ("CCO") but only for a brief period between March 2023 and April 2024. (*Id.* ¶ 19.)

Upright presently manages $62 million in regulatory assets on behalf of forty-two advisory clients, including UIT. (*Id.* ¶ 17.) UIT consists of three series funds, including the Upright Growth Fund (the "Fund"), which holds net assets totaling approximately $22.9 million. (*Id.* ¶¶ 22–23.) As its investment adviser, Upright was authorized to make all investment decisions on behalf of UIT's three series funds, including the Fund. (*Id.* ¶ 22.)

The Fund had a fundamental policy no more than 25% of the Fund's total assets may be invested in one industry (the "Concentration Policy"). (*Id.* ¶¶ 2, 34–42.) The Statement of

Additional Information ("SAI") subsequently filed with the Commission stated the Fund's fundamental polices "cannot be changed without approval by a majority of the outstanding voting securities," which was incorporated into the prospectus by reference. (*Id.* ¶ 37 (internal quotation marks omitted); *see also id.* ¶ 36.) Between 1998 and 2017, the Defendants consistently represented the Concentration Policy's investment restriction as a fundamental policy in the Fund's SAIs. (*Id.* ¶ 38.)

In violation of the Concentration Policy's investment restriction, Defendants invested more than 25% of the Fund's total assets in the semiconductors and/or pharmaceutical preparation industries between July 2017 and August 2018. (*Id.* ¶ 66.) In August 2018, the Board solicited proxy votes to convert the Fund's sub-classification from a diversified fund to a non-diversified fund (the "2018 Proxy Solicitation"). (*See id.* ¶ 41.) The 2018 Proxy Solicitation, however, neither proposed to amend nor amended the Concentration Policy's investment restriction.[2] (*See id.* ¶¶ 41, 56.) Following the 2018 Proxy Solicitation, Defendants continued to invest more than 25% of the Fund's total assets in the semiconductors and/or pharmaceutical preparation industries until June 2020. (*Id.* ¶ 66.) During this period, Defendants continued to represent to the Commission an investment restriction of 25% in the Fund's SAIs. (*Id.* ¶ 38.)

---

[2] Defendants repeatedly claim "Chiueh had a good faith belief that the 25% concentration limit could be exceeded and that the classification was proper, given that shareholders approved the 2018 Proxy Statement to change the Fund to a non-diversified fund." (ECF No. 41-1 at 29–30; *see also, e.g.*, *id.* at 11–12, 25–29.) Notably, Defendants do not appear to contest the fact the 2018 Proxy Statement had failed as a matter of law to amend the Concentration Policy's investment restriction. (*See generally* ECF No. 41-1.) Rather, Defendants only appear to contest that Chiueh knew or should have known the 2018 Proxy Statement had failed to amend same following the entry of the 2021 Consent Order. (*See generally id.*) For the purpose of this motion, the Court draws all inferences in the light most favorable to the Commission and accepts the factual allegation the 2018 Proxy Solicitation failed to amend the Concentration Policy's investment restriction as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips*, 515 F.3d at 228.

On March 5, 2019, the Commission issued a deficiency letter to Defendants (the "2019 Deficiency Letter") alleging UIT had violated the Concentration Policy by investing more than 25% of the Fund's total assets in one industry and had utilized inconsistent industry classifications between reporting periods. (*See id.* ¶¶ 43–49, 51–53, 92; *see also id.* ¶ 50 (referencing five purchases of three companies' securities representing 25% to 70% of the Fund's total assets in 2017).) The 2019 Deficiency Letter also notified Defendants the 2018 Proxy Solicitation had failed to amend the Concentration Policy and, as such, Defendants were required to continue to abide by the 25% investment restriction as reflected in the registration statement and subsequent SAIs. (*See id.* ¶ 56.)

Following the issuance of the 2019 Deficiency Letter, the Board did not attempt to solicit votes to amend the Concentration Policy's investment restriction. (*See id.* ¶ 40.) Defendants, however, represented to the Commission that the 25% investment restriction had been amended to a 50% restriction in the Fund's SAIs. (*See id.* ¶ 39.)

On October 13, 2021, Defendants submitted an offer of settlement, which the Commission subsequently accepted. (*See id.* ¶¶ 63–64.) On November 24, 2021, the parties entered a consent order finding Defendants had violated the Concentration Policy by investing more than 25% of the Fund's total assets in the semiconductors and pharmaceutical preparation industries between July 2017 and June 2020 (the "2021 Consent Order"). (*See id.* ¶¶ 66–67, 69.) Pursuant to the terms of the 2021 Consent Order, Defendants agreed to: (i) "cease-and-desist from committing or causing future violations" (*id.* ¶ 68); and (ii) "retain an independent compliance consultant ("ICC") to review and recommend corrective measures" (*id.* ¶ 70), which Defendants would "take all necessary steps to adopt, implement, and abide by" (*id.* ¶ 71).

In March 2022, Defendants retained an ICC. (*Id.* ¶ 72.) In June 2022, the ICC issued its preliminary report, which found Defendants had continued to invest more than 25% of the Fund's total assets in the semiconductors industry despite Defendants agreement to cease-and-desist from same (the "2022 ICC Preliminary Report"). (*Id.* ¶¶ 95, 97.) Consistent with the Commission's investigation and findings, the ICC found the 2018 Proxy Solicitation had failed to amend the Concentration Policy and, as such, Defendants were required to continue to abide by the 25% investment restriction. (*Id.* ¶ 98.) The ICC recommended Defendants reduce the investments in the semiconductors industry to comply with the Concentration Policy's investment restriction and to utilize a single, reputable third-party source for industry classifications. (*Id.* ¶¶ 100–01.) Defendants failed to implement and abide by the ICC's recommendations. (*See id.* ¶¶ 77–93.) As an alternative to reducing the investments, Defendants proposed to the ICC conducting a proxy vote to amend the Concentration Policy's investment restriction from 25% to 50%. (*Id.* ¶ 106.) On January 3, 2023, the ICC issued its final report rejecting Defendants' proposal to conduct a proxy vote prior to reducing the investments to comply with the Concentration Policy's investment restriction (the "2023 ICC Final Report").[3] (*Id.* ¶¶ 107–08.)

Between November 24, 2021, and June 23, 2024, Defendants continued to invest more than 25% of the Fund's total assets in the semiconductors industry. (*See id.* ¶¶ 77–93.) Prior to September 29, 2023, Defendants invested more than 25% alone in "Company A" stock. (*Id.* ¶ 80.) Defendants classified the stock as belonging to the "IC Design" industry despite the fact Company A described itself as a "global semiconductor company," Defendants' industry classification

---

[3] Although both parties reference the 2019 Deficiency Letter, the 2021 Consent Order, the 2022 ICC Preliminary Report, and the 2023 ICC Final Report, a copy of these documents has not been relied upon in either the Amended Complaint or Defendants' Motion to Dismiss, including any submission filed in connection with the motion. (*See generally* ECF Nos. 9, 41, 43, 47.)

source classified Company A as stock in the semiconductor industry, and Defendants had previously classified the stock as belonging to the semiconductor industry. (*See id.* ¶¶ 79, 88–92.) Defendants allegedly re-classified the Company A stock in an attempt to circumvent the investment restriction and to create an appearance of diversification. (*See id.*) During this period, Defendants continued to represent to the Commission that the 25% investment restriction had been amended to a 50% restriction in the Fund's SAIs. (*Id.* ¶ 39.)

The Commission alleges Defendants knowingly engaged in a multi-year fraudulent scheme to operate the Fund in violation with the Concentration Policy while acting to conceal their violations from the Commission, the Board, and the shareholders. (*See, e.g.*, *id.* ¶¶ 1, 4–6.) Relevant to this motion, the Commission claims Defendants failed to provide the Board with a copy of either the 2021 Consent Order and the 2022 ICC Preliminary Report prior to September 13, 2022 (*id.* ¶¶ 149, 152); and failed to provide a copy of the 2019 Deficiency Letter until after June 23, 2024 (*id.* ¶ 148). Furthermore, Defendants advised the Board that the 2021 Consent Order had been resolved and the 2022 ICC Preliminary Report was mistaken as the 2018 Proxy Solicitation had amended the Concentration Policy's investment restriction (*see id.* ¶¶ 150–55), despite the fact: (i) the Commission found the 2018 Proxy Solicitation had failed to amend the policy; and (ii) Defendants inherently accepted the Concentration Policy had not been amended by agreeing to cease-and-desist from investing more than 25% of the Fund's total assets in one industry *in further violation* of same (*see id.* ¶¶ 66, 68–69, 98). Defendants' continuous violation of and failure to reduce the investments in the semiconductors industry to comply with the Concentration Policy resulted in net losses approximately totaling $1.6 million. (*Id.* ¶¶ 5, 116.)

### B.    Procedural History

On March 17, 2025, the Commission filed a Complaint (ECF No. 1), which the Commission amended on April 11, 2025 (ECF No. 9). The Amended Complaint alleges the following causes of action against Defendants: violations of Securities Act § 17(a) (Counts One & Five), 15 U.S.C. §§ 77q (*id.* ¶¶ 168–70, 184–86); violations of Exchange Act § 10(b), 15 U.S.C. § 78j(b), as supplemented by Rule 10b-5 (Counts Two & Six), C.F.R. § 240.10b-5 (*id.* ¶¶ 171–73, 187–89); violations of Advisers Act § 206, 15 U.S.C. § 80b-6, as supplemented by Rule 206(4)-8(a)(1) (Counts Three & Seven), 17 C.F.R. § 275.206(4)-8(a)(1) (*id.* ¶¶ 174–77, 190–94); and violations of Investment Company Act § 15(c) (Count Four), 15 U.S.C. § 80a-15 (*id.* ¶¶ 178–83). The Amended Complaint also alleges aiding and abetting claims under Securities Act § 15(b) (Count Eight), 15 U.S.C. § 77o(b) (*id.* ¶¶ 195–98), Exchange Act § 20(e) (Count Nine), 15 U.S.C.A. § 78t(e) (*id.* ¶¶ 187–89), and Investment Company Act § 48(b) (Counts Ten & Eleven), 15 U.S.C. § 80a-47(b) (*id.* ¶¶ 203–14).[4]

On June 4, 2025, Defendants filed a motion to dismiss (ECF No. 14), which the Court terminated administratively for failure to request a pre-motion conference (ECF No. 17). Defendants filed a letter requesting a pre-motion conference on June 11, 2025 (ECF No. 21); and the Commission filed a response letter on June 18, 2025 (ECF No. 22). On July 15, 2025, the Court conducted the pre-motion conference and ordered motions to dismiss to be filed by August 15, 2025. (ECF Nos. 29, 31.)

---

[4] Counts One, Two, Three, Four, Ten, and Eleven are alleged against both Chiueh and Upright, and Counts Five, Six, Seven, Eight, and Nine are alleged against Chiueh only. (*See generally* ECF No. 9 ¶¶ 168-214.)

On August 15, 2025, Defendants filed the Motion to Dismiss Counts One, Two, Three, Six, Eight, Nine, Ten, and Eleven of the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 41.) The Commission filed an Opposition to the Motion to Dismiss on September 19, 2025 (ECF No. 43); and Defendants filed their Reply on October 20, 2025 (ECF No. 47).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a

defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after Iqbal, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss

[to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B.    Rule 9(b)

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

## III.    DECISION

Defendants move to dismiss Counts One, Two, Three, Six, Eight, Nine, Ten, and Eleven of the Amended Complaint pursuant to Rule 12(b)(6). (*See generally* ECF No. 41.) Specifically, Defendants argue Count One—the Securities Act §§ 17(a)(1) and (3) claim—should be dismissed for failure to show Defendants committed a deceptive or manipulative act (ECF No. 41-1 at 9–12); Counts Two and Six—the Exchange Act § 10(b) claims—should be dismissed for failure to

show Defendants committed a deceptive or manipulative act with scienter (*id.* at 9–24); Count Three—the Advisers Act §§ 206(1) and (2) claim—should be dismissed for failure to show Defendants committed a deceptive or manipulative act with scienter[5] (*id.* at 9–24); Counts Eight to Eleven—the "aiding and abetting" claims under Securities Act § 15(b), Exchange Act § 20(e), and Investment Company Act § 48(b)—should be dismissed for failure to show Defendants knowingly or recklessly provided substantial assistance to a primary violator (*id.* at 32–37). Defendants do not move to dismiss Counts Four, Five, or Seven. (*See generally id.*) Defendants also argue the Amended Complaint should be dismissed in its entirety as to Upright as a corporate entity cannot be held vicariously liable for the actions of its officers under *any* securities laws. (*Id.* at 30–32.) The Court addresses each argument in turn.

### A.    Securities Act § 17(a) & Exchange Act § 10(b)

Securities Act § 17(a) prohibits fraudulent conduct "in the offer or sale of any securit[y]," 15 U.S.C. § 77q(a), whereas Exchange Act § 10(b), as supplemented by Rule 10b-5 (collectively "Rule 10b-5"), prohibits fraudulent conduct "in connection with the purchase or sale[] of any

---

[5] The Commission argues Defendants mischaracterize liability under Advisers Act §§ 206(1) and (2) as "scheme liability" (*see* ECF No. 43 n.5)—liability based on a deceptive or manipulative act rather than a false or misleading statement or omission, *see U.S. Sec. & Exch. Comm'n v. Vuuzle Media Corp.* (*Vuuzle II*), Civ. A. No. 21-1226, 2023 WL 4118438, at *4 (D.N.J. June 22, 2023). Unlike Securities Act § 17(a) and Rule 10b-5, which include separate provisions for claims based on false or misleading statements or omissions, 15 U.S.C. § 77q(a)(2); 17 C.F.R. § 240.10b-5(b), and deceptive or manipulative acts, 15 U.S.C. § 77q(a)(1), (3); 17 C.F.R. § 240.10b-5(a), (c); *accord Vuuzle II*, 2023 WL 4118438, the courts have held the provisions of Advisers Act §§ 206(1) and (2) are sufficiently broad to encompass claims based on both, *see, e.g.*, *SEC v. Rivero*, Civ. A. No. 22-1360, 2023 WL 2238700, at *9–10 (D.N.J. Feb. 27, 2023). As Defendants do not argue the Advisers Act §§ 206(1) and (2) claim has failed to show Defendants have made a false or misleading statement or omission, the Court cannot dismiss Count Three of the Amended Complaint at this time. However, the Court will review the issue of whether the Advisers Act §§ 206(1) and (2) claim fails to show Defendants committed a deceptive or manipulative act on the basis of whether the claim should be limited in this matter to claims based on false or misleading statements or omissions only.

security," 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. *Accord United States Sec. & Exch. Comm'n v. Gu*, Civ. A. No. 21-17578, 2024 WL 4100369, at *8 (D.N.J. Sept. 6, 2024). It is well-established the elements required to assert a cause of action under either Securities Act § 17(a) or Rule 10b-5 are "essentially the same." *SEC v. Desai*, 145 F. Supp. 3d 329, 335 (D.N.J. 2015), *aff'd*, 672 F. App'x 201, 205 (3d Cir. 2016) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)).

Securities Act § 17(a)(2) and Rule 10b-5(b) govern causes of action based on false or misleading statements or omissions.[6] *U.S. Sec. & Exch. Comm'n v. Vuuzle Media Corp.* (*Vuuzle II*), Civ. A. No. 21-1226, 2023 WL 4118438, at *4 (D.N.J. June 22, 2023) (citing 15 U.S.C. § 77q(a)(2); 17 C.F.R. § 240.10b-5(b)). In contrast, Securities Act §§ 17(a)(1) and (3) and Rules 10b-5(a) and (c) govern causes of action based on "scheme liability," *i.e.*, allegations of deceptive conduct rather than false or misleading statements or omissions. *Id.* (citing 15 U.S.C. § 77q(a)(1), (3); 17 C.F.R. § 240.10b-5(a), (c)); *see also U.S. Sec. & Exch. Comm'n v. Mintz*, 723 F. Supp. 3d 386, 406–07 (D.N.J. 2024) ("A party can incur liability for employing a fraudulent scheme or

---

[6] To assert a false or misleading statements or omissions liability claim under either Securities Act § 17(a)(2) or Rule 10b-5(b), a plaintiff is required to plead sufficient facts showing:

> (1) the defendant made a [material] misrepresentation, or an omission where there was a duty to speak, or used a fraudulent device; (2) the misrepresentation or omission was material; (3) the defendant made the misrepresentation or omission with scienter; (4) the defendant made the misrepresentation or omission in connection with the sale of a security; and (5) the defendant made the misrepresentation or omission in connection with interstate commerce or the mails.

*Desai*, 145 F. Supp. 3d at 335; *but see U.S. Sec. & Exch. Comm'n v. Mintz*, 723 F. Supp. 3d 386, 403 (D.N.J. 2024) (noting a plaintiff is not required to show a connection with interstate commerce or the mails under Rule 10b-5); *Aaron v. SEC*, 446 U.S. 680, 697 (1980) (noting a plaintiff is not required to show the element of scienter to state a claim under Securities Act § 17(a)(2)).

engaging in any fraudulent act in connection with the purchase or sale of any security, even without making an oral or written statement."). To assert a scheme liability claim under either Securities Act § 17(a)(1) and (3) or Rules 10b-5(a) and (c), a plaintiff is required to plead sufficient facts showing: (1) "the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter." *Mintz*, 723 F. Supp. 3d at 407 (quoting *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 349–50 (D.N.J. 2009)); *but see Aaron v. SEC*, 446 U.S. 680, 697 (1980) (noting a plaintiff is not required to show the element of scienter to state a claim under Securities Act § 17(a)(3)).

Here, Defendants argue the Amended Complaint fails to plead sufficient facts showing: (1) Defendants committed a deceptive or manipulative act to state a scheme liability claim under Securities Act § 17(a)(1) and (3) and Rules 10b-5(a) and (c) (ECF No. 41-1 at 9–12); and (2) Defendants acted or failed to act with scienter under Rule 10b-5 (*id.* at 13–24). Defendants do not argue the Securities Act § 17(a)(1) claim has failed to show the element of scienter and, as such, the Court need not review same. *See Miller v. Burt*, 765 F. App'x 834, 838 (3d Cir. 2019) ("An issue is waived unless a party raises it in its opening brief . . . ." (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

### 1.    Scheme Liability Act

Allegations of misstatements and omissions alone are insufficient to state a scheme liability claim. *See Mintz*, 723 F. Supp. 3d at 407. To sufficiently state a claim under either Securities Act §§ 17(a)(1) and (3) or Rule 10b-5(a) and (c), the Commission is required to plead "the defendant committed a deceptive or manipulative act . . . *beyond* misstatements and omissions." *Id.* (internal quotation marks and citations omitted). As recognized by the Supreme Court, however, the provisions of both Securities Act § 17(a)(1) and (3) and Rule 10b-5(a) and (c) are sufficiently

broad to include "a wide range of conduct." *Id.* (quoting *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 79 (2019)); *see, e.g.*, *Lorenzo*, 587 U.S. at 79 (holding the Commission sufficiently pled a scheme liability claim based on allegations of "dissemination [of] false or misleading information to prospective investors"); *Mintz*, 723 F. Supp. 3d at 407 (holding the Commission sufficiently pled a scheme liability claim based on allegations of "repeated circumvention of Regulation SHO and efforts to conceal [the] [d]efendants' scheme"); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 856 (D. Md. 2005) (holding the Commission sufficiently pled a scheme liability claim based on allegations favored market insiders engaged in market timing "at the expense of long-term mutual fund investors from whom it [was] concealed and who have a right to rely upon its prevention by fund advisers' and managers' good faith performance of their fiduciary obligations").

Here, the Amended Complaint identifies the circumstances constituting deceptive conduct independent of the allegations of misstatements or omissions with particularity, in compliance with the heightened pleading requirements of Rule 9(b). The Commission alleges UIT had a Concentration Policy requiring Defendants not to invest more than 25% of the Fund's total assets in one industry. (ECF No. 9 ¶ 35.) In 2019, the Commission issued the deficiency letter as Defendants had invested more than 25% of the total assets in the semiconductors industry and the pharmaceutical preparation industry in violation of the Concentration Policy. (*See id.* ¶¶ 44, 47, 66.) In response, Defendants "agreed to cease-and-desist from committing or causing future violations . . . as well as to be censured." (*Id.* ¶¶ 63, 68.) The parties entered into the 2021 Consent Order, which required Defendants to retain an ICC and "to take all necessary steps to adopt, implement, and abide by the ICC's recommendations." (*Id.* ¶¶ 67–72.)

Following the entry of the 2021 Consent Order, however, Defendants continued to invest more than 25% of its total assets in the semiconductors industry. (*See id.* ¶¶ 77–93.) Defendants

invested more than 25% in "Company A" stock alone (*id.* ¶ 80), which it classified as stock in the "IC Design" industry (*id.* ¶ 88)—despite the fact Company A described itself as a "global semiconductor company" (*id.* ¶ 90), Defendants' own industry classification source classified Company A as stock in the semiconductor industry (*id.* ¶ 79), and Defendants' previously classified the stock as belonging to the semiconductor industry (*id.* ¶ 89). Furthermore, the Amended Complaint alleges Defendants failed to implement or abide by the ICC's recommendations (*see id.* ¶ 109); withheld from the Board the 2019 Deficiency Letter, 2021 Consent Order, and the 2022 ICC Preliminary Report (*see id.* ¶¶ 147–49, 152–55); advised the Board that the alleged deficiencies had been corrected prior to 2021 (*see id.* ¶ 151); and submitted SAIs suggesting the Board solicited proxy votes to amend the Concentration Policy's investment restriction after 2021 (*see id.* ¶¶ 121–30). Accordingly, the Amended Complaint sufficiently identifies circumstances of deceptive and manipulative acts to conceal material information from the Commission, the Board, and the shareholders. *See Mintz*, 723 F. Supp. 3d at 407 ("[T]he [Commission] has sufficiently identified the circumstances of the alleged fraudulent conduct— repeated circumvention of [r]egulation[s] . . . and efforts to conceal [the] [d]efendants' scheme. Though based on the alleged misstatements, the Commission's scheme liability claim contains the "something extras" required to survive dismissal." (internal citation omitted) (quoting *SEC v. Stubos*, 634 F. Supp. 3d 174, 201 (S.D.N.Y. 2022))).

Based on the foregoing, Defendants' Motion to Dismiss Count One of the Amended Complaint—the Securities Act §§ 17(a)(1) and (3) claim—is **DENIED**.

### 2.    Scienter

"Scienter is 'a mental state embracing intent to deceive, manipulate or defraud.'" *U.S. S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 192 (3d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*,

425 U.S. 185, 193 n.12 (1976)). To sufficiently plead scienter, the Commission is required to either: "(1) identify circumstances indicating conscious or reckless behavior by [the] defendants[;] or (2) allege facts showing both a motive and a clear opportunity for committing the fraud." *Mintz*, 723 F. Supp. 3d at 408 (internal quotation marks omitted) (quoting *In re Burlington Coat Factory*, 114 F.3d at 1422; *see also Infinity Grp. Co.*, 212 F.3d at 192 ("We have previously held that the scienter required for securities fraud includes recklessness," *i.e.*, "[h]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care." (quoting *McLean v. Alexander*, 599 F.3d 1190, 1196–97 (3d Cir. 1979))). "To establish a corporation's scienter, the mental state of an officer acting on the corporation's behalf may be imputed to it." *Id.* (quoting *SEC v. Cooper*, 142 F. Supp. 3d 302, 313 (D.N.J. 2015)). Although the Commission is not required to allege scienter with particularity, "its allegations must support a plausible inference of scienter." *Id.*; *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Here, the Amended Complaint pleads sufficient facts to infer Defendants knowingly or recklessly engaged in fraudulent behavior under Rule 10b-5. As discussed, *see supra* Sections II.A, III.A.1, the Commission issued the 2019 Deficiency Letter to Defendants based on their investment of more than 25% of the total assets in the semiconductor industry in violation of the Concentration Policy, which ultimately resulted in Defendants agreeing to cease-and-desist from further violations of same in the 2021 Consent Order. (*See* ECF No. 9 ¶¶ 44, 47, 63, 66, 68.) Following the entry of the 2021 Consent Order, the ICC issued the 2022 ICC Preliminary Report and the 2023 ICC Final Report, both of which notified Defendants that more than 25% of the total assets were invested in the semiconductors industry with more than 25% invested in Company A alone. (*See id.* ¶¶ 77–93.) In support of this, Defendants were notified the 2018 Proxy Solicitation

had failed to amend the Concentration Policy's investment restriction both prior to and following the entry of the 2021 Consent Order. (*See id.* ¶¶ 43–53, 77–108.) Nevertheless, Defendants advised the Board the continued investment of more than 25% of the total assets in the semiconductor industry was compliant with the Concentration Policy's investment restriction as the 2018 Proxy Solicitation had successfully amended same. (*See id.* ¶¶ 151, 154.) These circumstances alone are sufficient to indicate recklessness. *See, e.g.*, *Mintz*, 723 F. Supp. 3d at 409 ("Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter." (quoting *SEC v. Constantin*, 939 F. Supp. 2d 288, 308 (S.D.N.Y. 2013))). Accordingly, the Amended Complaint sufficiently pleads Defendants acted or failed to act with scienter under Rule 10b-5.

Based on the foregoing, Defendants' Motion to Dismiss Counts Two and Six of the Amended Complaint—the Rule 10b-5 claims—is **DENIED**.

### B.    Advisers Act §§ 206(1) & (2)

The Advisers Act §§ 206(1) and (2) prohibit fraudulent conduct and imposes on investment advisers a fiduciary duty. *See* 15 U.S.C.A. § 80b-6. "That duty requires an adviser to act in good faith, to disclose fully and fairly all material facts to its clients, and to employ reasonable care to avoid misleading its clients."[7] *SEC v. Rivero*, Civ. A. No. 22-1360, 2023 WL 2238700, at *9–10 (D.N.J. Feb. 27, 2023) (quoting *SEC v. Chiase*, Civ. A. No. 10-5110, 2011 WL 6176209, at *5

---

[7] Although a plaintiff is required to plead sufficient facts showing the defendant acted with scienter to state a claim under § 206(1), *see* 15 U.S.C.A. § 80b-6(1) (barring an investment adviser from "employ[ing] any device, scheme, or artifice to defraud any client or prospective client"), a plaintiff is not required to plead scienter to state a claim under § 206(2), *see* 15 U.S.C.A. § 80b-6(2) (barring an investment adviser from "engag[ing] in any transaction, practice or course of business which operates as a fraud"). *See Desai*, 145 F. Supp. 3d at 336 (D.N.J. 2015).

(D.N.J. Dec. 12, 2011)); *Chiase*, 2011 WL 6176209, at *5 ("That is, investment advisers must act for the benefit of their clients and must not use their clients' assets to benefit themselves."). It is well-established "[f]acts showing a violation of [Securities Act] § 17(a) or [Rule 10b-5] by an investment adviser will also support a showing of a[n] [Advisers Act] § 206 violation." *Rivero*, 2023 WL 2238700, at *10 (quoting *Desai*, 145 F. Supp. 3d at 336).

Here, Defendants allege the Amended Complaint fails to state a claim under Advisers Act §§ 206(1) or (2). (*See generally* ECF No. 41-1 at 13–24.) Specifically, Defendants argue the Commission fails to plead sufficient facts to show Defendants acted or failed to act with scienter. (*Id.*) However, the Court need not engage in a separate analysis as to whether the Amended Complaint pleads sufficient facts to infer Defendants knowingly or recklessly engaged in fraudulent behavior under Advisers Act §§ 206(1) or (2). Having determined the Amended Complaint sufficiently pleads an inference of scienter under the Rule 10b-5, *see supra* Section III.A.2, the Amended Complaint sufficiently pleads an inference of scienter under the Advisers Act §§ 206(1) and (2), *see Rivero*, 2023 WL 2238700.

Based on the foregoing, Defendants' Motion to Dismiss Count Three of the Amended Complaint—under Advisers Act §§ 206(1) and (2)—is **DENIED**.

### C.    Aiding & Abetting Liability

Securities Act § 15(b), Exchange Act § 20(e), and Investment Company Act § 48(b) permit the Commission to bring an action against "any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of [the securities laws], or of any rule or regulation issued [there]under." 15 U.S.C. §§ 77o(b), 78t(e), 80a-47(b). As the operative language in the securities laws are nearly identical, "the standard for aiding and abetting liability is the same under [each] statute[]." *Sec. & Exch. Comm'n v. Sharp*, 626 F. Supp. 3d 345,

398 (D. Mass. 2022) (quoting *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 61 (S.D.N.Y. 2017)). To state an aiding and abetting claim, the Commission must show: "(1) there is an underlying securities law violation by a primary party; (2) the defendant provided substantial assistance to the violator; and (3) the defendant knowingly or recklessly provided that assistance." *Vuuzle II*, 2023 WL 4118438, at *7 (quoting *Sec. & Exch. Comm'n v. Dubovoy*, Civ. A. No. 15-6076, 2016 WL 5745099, at *5–6 (D.N.J. Sept. 29, 2016)); *accord Monsen v. Consol. Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir. 1978); *Sec. & Exch. Comm'n v. Patel*, 794 F. Supp. 3d 111, 126–27 (E.D.N.Y. 2025).

Here, Defendants argue the Amended Complaint fails to allege an aiding and abetting claim under Securities Act § 15(b), Exchange Act § 20(e), or Investment Company Act § 48(b). (*See generally* ECF No. 41-1 at 33–37.) Specifically, Defendants claim the aiding and abetting claims against Chiueh must be dismissed as Chiueh is the primary violator of the securities laws and, as such, the Commission cannot establish secondary claims against him.[8] (*Id.* at 36–38.) Defendants also claim the aiding and abetting claims against Upright should be dismissed as the Commission fails to demonstrate Upright knowingly or recklessly provided Chiueh with substantial assistance as the claims impermissibly "lump" Defendants' respective acts and scienter together. (*Id.* at 33–34.)

First, the aiding and abetting claims against Chiueh do not suggest Chiueh was the primary violator. (*See generally* ECF No. 9 ¶¶ 195–214 (identifying, for purposes of the aiding and abetting claims, UIT as the primary violator).) Although a defendant cannot be *held* liable under both

---

[8] Defendants also argue the aiding and abetting claims against Chiueh should be dismissed as the allegations are insufficient to demonstrate Chiueh knowingly or recklessly provided substantial assistance "for the same reasons that they are insufficient to establish scienter in the context of a § 10(b) and Rule 10(b)(5) claim." (ECF No. 41-1 at 36-37); *but see supra* Section III.A.2.

primary and secondary liability principles, *see Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 763 (D.N.J. 2013), it is well-established the Commission may *plead* both in the alternative at this stage in the proceeding, *see U.S. Sec. & Exch. Comm'n v. Vuuzle Media Corp.* (*Vuuzle I*), Civ. A. No. 21-1226, 2022 WL 577968, at \*12 (D.N.J. Feb. 14, 2022), *aff'd*, 2022 WL 1156762 (D.N.J. Apr. 19, 2022) ("[P]laintiffs may plead both primary fraud and aiding and abetting; such a pleading strategy is legally permissible, as plaintiffs need not, at the motion to dismiss stage, choose amongst alternative theories of relief." (quoting *King County v. IKB Deutsche Industriebank AG*, 751 F. Supp. 2d 652, 666 (S.D.N.Y. 2010)). As the Commission may ultimately establish UIT was in fact the primary violator and not Chiueh, the Commission may allege secondary liability claims against Chiueh at this time. Based on the foregoing, Defendants' Motion to Dismiss the aiding and abetting claims against Chiueh—Counts Eight to Eleven of the Amended Complaint—is **DENIED**.

Second, the Commission may demonstrate the aiding and abetting claims against Upright based on the acts and scienter of its sole actor—Chiueh. In an action against a group of defendants, each of whom had different roles in a fraudulent scheme, a plaintiff is required to demonstrate the role each individual defendant played in the scheme with requisite particularity under Rule 9(b). *See Mintz*, 723 F. Supp. 3d at 409–10. "[T]he purpose of the proscription against group-pleading in this context is to ensure each defendant has notice of the 'precise misconduct' with which he [or she] is charged." *Mintz*, 723 F. Supp. 3d at 409. However, in an action against an officer at the center of a fraudulent scheme and the corporate entity on whose behalf the officer acted on, the courts have typically permitted group-pleading as the claims against the corporate defendant may not entail conduct independent of or separate from the officer defendant's acts. *Mintz*, 723 F. Supp. 3d at 410. "In such circumstances, courts look to agency-law principles and consider the conduct

and scienter of the primary violator to determine whether the corporate defendant can be liable under [the securities laws]." *Mintz*, 723 F. Supp. 3d at 410 (citing *SEC v. Complete Bus. Solutions Grp., Inc.*, 538 F. Supp. 3d 1309, 1336 (S.D. Fla. 2021); *APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1353 (N.D. Ga. 2004)).

As noted by Defendants, Upright allegedly has neither a board of directors nor "*any* employees." (ECF No. 41-1 at 34 (emphasis added).) Chiueh "is alleged to be Upright's founder, owner, president, and sole controlling person." (*Id.* at 33–34.) Furthermore, "[t]he [Commission] alleges no separate or independent conduct by Upright or anyone else." (*Id.* at 34.) Therefore, it is apparent the aiding and abetting claims against Upright are not based on allegations of primary liability but rather vicarious liability. *See Mintz*, 723 F. Supp. 3d at 410 ("[T]here is no suggestion in the pleading that [the corporate defendant] is liable for conduct that is independent of or separate from [the officer defendant]'s actions. In other words, the [Commission] asserts that [the corporate defendant] is vicariously liable for [the officer defendant]'s [fraudulent] scheme . . . ."). Because the Court has concluded the Amended Complaint has sufficiently alleged Chiueh knowingly or recklessly provided UIT with substantial assistance, "it can readily impute his conduct and scienter to [Upright]." *Mintz*, 723 F. Supp. 3d at 410; *see also Cooper*, 142 F. Supp. 3d at 316–17 ("Because [the officer defendant] has the requisite scienter, it may be imputed to the [corporate defendant] as well."); *CFTC v. Traders Glob. Grp. Inc.*, Civ. A. No. 23-11808, 2023 WL 7545316, at *11 (D.N.J. Nov. 14, 2023) ("[A]s the sole executive of [the corporate defendants], [the officer defendant]'s scienter may be imputed to the corporate [d]efendants."). Based on the foregoing, Defendants' Motion to Dismiss the aiding and abetting claims against Upright—Counts Ten to Eleven of the Amended Complaint—is **DENIED**.

### D.    Vicarious Liability

Finally, Defendants argue the Amended Complaint cannot state a claim against Upright based on vicarious liability. (*See generally* ECF No. 41-1 at 13–24.) Specifically, Defendants claim the causes of action should be dismissed against Upright because the Third Circuit "has rejected any respondeat superior liability for securities violations."[9] (*Id.* at 25 (emphasis added).) In support, Defendants solely rely on the following Third Circuit decisions *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir. 1981), and *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975). (*See generally* ECF No. 41-1 at 24–26.) As Defendants merely claim the Commission *cannot* assert a claim of vicarious liability against Upright and have not argued, in the alternative, the Commission *has not* asserted sufficient facts to state same, the Court will limit its review solely to the issue of whether the Commission can under any circumstances assert a claim of vicarious liability against a corporate defendant in the area of federal securities regulation for the fraudulent acts or omissions of an officer.

Defendants' claim that the Third Circuit has rejected *any* respondeat superior liability against an employer for securities violations is palpably incorrect. Neither *Sharp* nor *Rochez* support the claim the Third Circuit has rejected any respondeat superior liability. *See, e.g.*, *Sharp*, 649 F.2d at 182–83 (emphasizing "the doctrine of respondeat superior, *though applicable in this case*, has not been and should not be widely expanded in the area of federal securities regulation" (emphasis added) (citing *Rochez*, 527 F.2d at 885)). Although the Third Circuit has been, and

---

[9] Defendants also argue Upright's vicarious liability cannot be imposed under controlling person liability pursuant to Securities Act § 20(a). (ECF No. 41-1 at 25–26.) Defendants appear to conflate the two doctrines of respondeat superior and controlling person, "which are two separate types of secondary liability." *Jairett v. First Montauk Sec. Corp.*, 153 F. Supp. 2d 562, 573 n.11 (E.D. Pa. 2001) (citing Louis Loss, et. al., *Fundamentals of Securities Regulation 1233–41* (4th ed. 2001)).

continues to be, mindful not to widely expand the doctrine of respondeat superior in the area of federal securities regulation, the Third Circuit has recognized respondeat superior liability as a viable theory of recovery against an employer under certain circumstances. *See Belmont v. MB Inv. Partners, Inc.*, Civ. A. No. 09-4951, 2010 WL 2348703, at *9–10 (E.D. Pa. June 10, 2010), *aff'd*, 708 F.3d 470 (3d Cir. 2013). Accordingly, the Commission can assert claims of vicarious liability against a corporate defendant for the fraudulent acts or omissions of its officers. To state such a claim at this stage in the proceedings, it is sufficient to allege an officer violated the securities law, or a rule or regulation issued thereunder, and the corporate defendant had a duty to monitor its officers. *See id.* at *10; *see also Mintz*, 723 F. Supp. 3d at 409–10 ("Because the Court has concluded that the [Commission]'s allegations are sufficient against [the officer], it can readily impute [the officer's] conduct and scienter to [the corporate defendant].").

Based on the foregoing, Defendants' Motion to Dismiss the Amended Complaint against Upright is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss under Rule 12(b)(6) (ECF No. 41) is **DENIED**. An appropriate order follows.

Date: January 21st, 2026                          */s/ Brian R. Martinotti*
                                                  **HON. BRIAN R. MARTINOTTI**
                                                  **UNITED STATES DISTRICT JUDGE**